UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO: 15-108 |
| MICHAEL RAY TAYLOR | SECTION: "J"(3) |

### ORDER & REASONS

Before the Court is a *Motion for Compassionate Release* **(Rec. Doc. 99)** and a *Motion for Leave to File Supplement to Expedite the Motion for Compassionate Release* **(Rec. Doc. 115)** filed by Defendant, Michael Ray Taylor. The Government filed an opposition to Defendant's *Motion for Compassionate Release*. (Rec. Doc. 105). Defendant filed a reply to the Government's opposition. (Rec. Doc. 110). Having considered the motions and memoranda, the record, and the applicable law, the Court finds that the *Motion for Compassionate Release* should be **GRANTED**.

### FACTS AND PROCEDURAL BACKGROUND

On April 24, 2015, a federal grand jury returned a two-count indictment against Defendant for an interstate methamphetamine conspiracy. Defendant was charged with conspiracy to distribute and possess with the intent to distribute 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §841(a)(1), § 841(b)(1)(A), and §846; and distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(B), § 846 and 18 U.S.C. § 2. (Rec. Doc. 1). On June 23, 2016, pursuant to a plea agreement with

the Government, Defendant was rearraigned and entered a plea of guilty to count 1 of the indictment and count 2 of the indictment was dismissed. (Rec. Docs. 50 and 52). On March 23, 2017, the Court sentenced Defendant to serve 120 months of imprisonment on count 1. (Rec. Doc. 94).

Defendant is currently being housed in the Federal Bureau of Prisons (BOP), Beaumont Low FCI in Beaumont, Texas, and his anticipated released date is August 31, 2023. On June 11, 2020, Defendant filed a request for compassionate release with the Warden of Beaumont Low FCI. On July 23, 2020, Defendant filed a motion for compassionate release in this Court, citing 18 U.S.C. § 3582(c)(1)(A). (Rec. Doc. 99).

## LEGAL STANDARD

"A court, on a motion by the [Bureau of Prisons ("BOP")] or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Chambliss*, 948 F.3d 691, 692 (5th Cir. 2020) (quoting § 3582(c)(1)(A)(i)). To meet the exhaustion requirement, a defendant must submit a request to "the warden of the defendant's facility" for the BOP "to bring a motion [for compassionate release] on the defendant's behalf." § 3582(c)(1)(A). If the request is denied, the defendant must pursue and exhaust "all administrative rights to appeal." *Id.* Alternatively, the requirement is considered satisfied after "30 days from the receipt of such a request by the warden." *Id.*

In addition to finding extraordinary and compelling reasons, the Court must also find that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The U.S. Sentencing Guidelines provide that a reduction should be granted only if "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2) (p.s.).[1]

If the Court grants a sentence reduction, it may impose a term of supervised release with conditions, including home confinement, "that does not exceed the unserved portion of the original term of imprisonment." § 3582(c)(1)(A).

## DISCUSSION

### I. EXTRAORDINARY AND COMPELLING REASONS

When deciding whether to grant compassionate release, the Court must first determine whether Defendant has demonstrated "extraordinary and compelling reasons" to justify the reduction of his sentence and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include certain specified categories of medical conditions. § 1B1.13, cmt. n.1(A). Specifically, Defendant must be suffering from either a "terminal illness" or a "serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.*

---

[1] Policy statements are binding in § 3582(c) proceedings. *United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011).

The Government concedes that, "if an inmate has established that he has a chronic medical condition from which he is not expected to recover and that condition constitutes a CDC risk factor elevating the inmate's risk of becoming seriously ill from COVID-19, then the inmate has satisfied the standard of "extraordinary and compelling reasons."" (Rec. Doc. 105, at p.12). In its concession, the Government explains that an inmate with a chronic CDC risk factor has a substantially diminished ability to provide self-care to prevent serious injury or death as a result of COVID-19 within the environment of a correctional facility. (*Id.*).

On February 21, 2015, while in custody, Defendant had a heart attack, which resulted in an emergency surgery to remove the blockage and the placement of two stents in his heart. Defendant was subsequently diagnosed with a coronary artery disease. On January 15, 2019, Defendant received a coronary artery bypass surgery. Since this surgery, Defendant has suffered from episodes of chest pain, shortness of breath, and dizzy spells. On November 26, 2019, Defendant received an angiogram that indicated the worsening condition of his cardiac functions. Defendant was scheduled for an appointment to receive an echocardiogram to determine the cause of his reduced cardiac functions, but the appointment was cancelled due to COVID-19. Despite Defendant's requests, his echocardiogram appointment has not been rescheduled due to COVID-19 restrictions.

The CDC lists Defendant's coronary artery disease as an underlying medical condition that increases the risk of death or severe illness from COVID-19.[2] The

---

[2] Center for Disease Control, *People with Certain Medical Conditions*, (September 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

Government concedes that this illness "generally presents an extraordinary and compelling reason under § 3582(c)(1)(A) and § 1B1.13 cmt. n.1(A)(ii)(I)." (Rec. Doc. 105, at p.12). However, the Government submits that a staff physician at FCI Beaumont, who has treated Defendant, indicated that Defendant's medical condition is stable and Defendant "has no justifiable/qualifying criteria for reduction in sentence (RIS) consideration…his illnesses are not life threatening; nor [does he have] any higher morbidity/mortality, compared to his peers with similar conditions." (Rec. Doc. 105, Exhibit F). In reference to potential exposure to COVID-19, the staff physician stated, "[s]hould he gets exposed to / infected with COVID-19, he still might NOT have any Higher Risk of Morbidity/Mortality, compared to the other inmates with the same age group & similar Medical conditions (such as Heart disease/Lung Disease/HIV/IDDM/Hep-C etc)." (*Id.*). In contrast, Defendant has submitted both a medical evaluation and a letter from Dr. Amy Kossoff, an internal medicine doctor with 35 years of experience, who recommends that Defendant receive immediate medical treatment. (Rec. Docs. 108, Exhibit J and 115, Exhibit 1).

As stated above, CDC guidelines are clear that coronary artery diseases increase the risk of death or severe illness from COVID-19. The Government concedes that, if Defendant demonstrates that his medical condition is a CDC risk factor elevating his chances of becoming seriously ill from COVID-19, then he has satisfied the standard of extraordinary and compelling reasons. Although the FCI Beaumont staff physician, stated that Defendant "might" not have any higher risk of mortality from COVID-19, this was only when compared to other inmates with similar

5

conditions. (Rec. Doc. 105, Exhibit F). In addition, the use of the word "might" indicates that the staff physician is not certain whether Defendant's condition puts him at an increased risk compared to other inmates with similar conditions. On the other hand, Dr. Kossoff opines that Defendant's weakening cardiac functions alone could kill him, and COVID-19 increases that risk dramatically. (Rec. Docs. 108, Exhibit J and 115, Exhibit 1). For these reasons, this Court finds that Defendant has demonstrated that his coronary artery disease, along with the increased risk of mortality from COVID-19, is an extraordinary and compelling reason to grant compassionate release that is consistent with the policy statements issued by the Sentencing Commission.

## II.   DETERMINATION OF DANGER TO THE COMMUNITY

Next, the Court must decide whether Defendant has carried his burden of proving that he is not a danger to the safety of the community. § 1B1.13(2). Under 18 U.S.C. § 3142(g), the Court must consider: (1) the nature and circumstances of the defendant's offense, including whether it is a violent offense; (2) the history and characteristics of the defendant, including his physical condition, criminal history, and history of drug abuse; and (3) the nature and seriousness of the danger to a person or the community at large posed by the defendant's release.

Defendant's current conviction is for conspiracy to distribute and possess with the intent to distribute 500 grams or more of a mixture or substance containing methamphetamine (Rec. Doc. 51).  When federal agents executed a search warrant of Defendant's home pursuant to this crime, they recovered approximately 32 grams of

methamphetamine, 22 grams of heroin, and 29 grams of cocaine hydrochloride. PSR, ¶¶ 25-27. During this same search, officers also found a number of firearms. (Rec. Doc. 51).

Defendant's criminal history began in 1986 and includes two charges for illegal possession of weapons and convictions for possession of marijuana and driving while intoxicated. PSR, ¶¶ 50-60. In addition, on April 24, 2020, a disciplinary hearing officer found the defendant was using buprenorphine, an illicit narcotic, while incarcerated. (Rec. Doc. 105, Exhibit D). However, Dr. Kossoff opined that this misuse of medication was an attempt to self-medicate to relieve Defendant's pain, noting that this medication has a "very mild pain-relieving action." (Rec. Docs. 108, Exhibit J, at p.5).

In support of his argument that he would not be a danger to society if released, Defendant submits his August 17, 2020 PATTERN Risk Assessment. (Rec. Doc. 110, Exhibit G). This risk assessment decreased Defendant's score to a "minimum" status, which is the status that indicates the lowest probability of recidivism. (*Id.*). Defendant has also submitted a plan to engage in substance abuse counseling support, spiritual guidance, and family support to help sustain his continued sobriety. (Rec. Doc. 110, Exhibit H). Defendant also argues that he has evidenced an intentional effort at rehabilitation and self-improvement by obtaining his GED, taking two substance abuse classes, and completing courses on parenting and personal finance. Finally, Defendant notes that he has never been arrested for or convicted of a violent crime and has not engaged in any violent behavior while

7

incarcerated. Considering the foregoing facts and the § 3142(g) factors, the Court concludes that the Defendant would not be a danger to his community if released.

Additionally, the § 3553 sentencing factors also support Defendant's release. In light of Defendant's medical condition and need for medical care, the Court finds that imposing a term of supervised release with the condition of home confinement reflects the seriousness of Defendant's offenses and promotes respect for the law.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Michael Ray Taylor's *Motion for Leave to File Supplement to Expedite the Motion for Compassionate Release* **(Rec. Doc. 115)** is **GRANTED**. The Court will include Michael Ray Taylor's supplemental exhibits in the record and considered them when rendering its decision in this order.

**IT IS FURTHER ORDERED** that Michael Ray Taylor's *Motion for Compassionate Release* **(Rec. Doc. 99)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Michael Ray Taylor's sentence is **MODIFIED** and **REDUCED** to time served pursuant to 18 U.S.C. § 3852(c). The remaining portion of Michael Ray Taylor's term of imprisonment (as calculated by the Bureau of Prisons) shall be served on supervised release with the special condition of home incarceration. Michael Ray Taylor is restricted to a 24-hour-a-day lock-down at his residence except for medical necessities and court appearances or other activities specifically pre-approved by the Court. For the initial 12-month period

of supervised release, Michael Ray Taylor shall be monitored by radio frequency, to commence within 10 days of his release from imprisonment.

**IT IS FURTHER ORDERED** that the term of home incarceration shall be followed by the five-year term of supervised release imposed in the original sentence. The originally imposed special conditions are to remain in effect.

**IT IS FURTHER ORDERED** that the Warden of Beaumont Low Federal Correctional Institution shall immediately release Michael Ray Taylor from custody.

**IT IS FURTHER ORDERED** that upon his release Michael Ray Taylor shall self-quarantine at home for a period of 14 days.

New Orleans, Louisiana, this 19th day of October, 2020.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE